UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | File No. 20-cr-123 (ECT/HB) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Salvador Nunez-Hernandez, | |
| Defendant. | |

---

Salvador Nunez-Hernandez, *pro se*.

---

Defendant Salvador Nunez-Hernandez has filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 96. In early 2021, Nunez-Hernandez pleaded guilty to reentry of a removed alien in violation of 8 U.S.C. §§ 1326(a), 1326(b)(1), and 6 U.S.C. §§ 202, 557, and the distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). ECF No. 56. On April 27, 2021, he was sentenced to a 121-month term of imprisonment. ECF No. 75. Nunez-Hernandez is in the custody of the Federal Bureau of Prisons at the Federal Correctional Institution in Fort Dix, NJ ("FCI-Fort Dix"), with a projected release date of November 7, 2028. *See* Fed. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited Feb. 27, 2023).

Nunez-Hernandez, age 57, requests a reduction in sentence because of the COVID-19 pandemic. He claims to be "at a heightened risk for death due to (COVID-19), (long-COVID), (Omicron), and the (sub-serviant) [sic] which their [sic] seems to be no anti-body

with which to cure it." ECF No. 96 at 1 (parentheses in original). Nunez-Hernandez seeks to have his sentence reduced to time served or, alternatively, an immediate transfer to home confinement. *Id*. at 5.[1] For the following reasons, Nunez-Hernandez's motion for compassionate release will be denied.

Nunez-Hernandez has exhausted administrative remedies, allowing him to seek relief in district court. A court may not consider a defendant's motion until "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Nunez-Hernandez submitted a request for reduction in sentence to the warden on December 8, 2022, ECF No. 96-1 at 1, and filed his compassionate-release motion on January 27, 2023, ECF No. 96. Because more than 30 days lapsed between the request and motion, Nunez-Hernandez's motion for compassionate release is properly before the Court.[2]

---

[1] To the extent Nunez-Hernandez requests that he serve the remainder of his imprisonment term on home confinement, that request is denied. The authority to determine the placement of prisoners, including placement on home confinement, rests solely with the Bureau of Prisons. *See* 18 U.S.C. §§ 3621(b), 3624(c)(2); *United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021).

[2] It is worth pausing to note the operative language in § 3582(c)(1)(A) is receipt by the warden, not when the inmate requests compassionate relief. But courts often measure the 30-day window from the date of request through the date of the inmate's motion. *See United States v. Adams*, 512 F. Supp. 3d 901, 904 (E.D. Mo. 2021); *see also United States v. Brown*, 457 F. Supp. 3d 691, 696 (S.D. Iowa 2020). Furthermore, 50 days passed from Nunez-Hernandez's request to the warden to the date he filed his motion for compassionate release with the Court. The warden should have received Nunez-Hernandez's request for compassionate release within 20 days.

A district court generally "may not modify a term of imprisonment once it has been imposed" except in limited circumstances. 18 U.S.C. § 3582(c). The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) is one such exception. Upon motion of the defendant, § 3582(c)(1)(A) allows a court to "reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A). A court must find that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The defendant bears the burden to demonstrate that he or she is entitled to a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Courts have found that a defendant requesting compassionate release due to COVID-19 must show a "particularized susceptibility" to the virus and "a particularized risk of contracting the disease at his or her prison facility." *See United States v. Robinson*, No. 17-cr-318 (SRN), 2020 WL 4463363, at *5 (D. Minn. Aug. 4, 2020) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases)); *see also United States v. Miland*, No. 16-cr-159 (WMW), 2020 WL 3249259, at *3 (D. Minn. June 16, 2020). Nunez-Hernandez fails both prongs.[3]

---

[3] Instead of focusing on his individual circumstances, Nunez-Hernandez contends new developments in the COVID-19 pandemic, such as Omicron and Omicron subvariants, are extraordinary and compelling reasons to reduce his sentence. ECF No. 96 at 1–3. This alone is not enough. Section 3582(c)(1)(A) requires "an individualized inquiry, not a widespread release of inmates based on the existence of a persistent worldwide pandemic." *United States v. Marcussen*, 15 F.4th 855, 858 (8th Cir. 2021).

For particularized susceptibility, the two main factors courts consider are age and underlying health conditions. Here, Nunez-Hernandez's age of 57 does not demonstrate he is particularly susceptible to COVID-19. The risk for hospitalization and death from COVID-19 increases with age, *see* Ctrs. for Disease Control and Prevention ("CDC"), *Risk for COVID-19 Infection, Hospitalization, and Death By Age Group*, (Feb. 6, 2023), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html, but courts agree that defendants of similar age to Nunez-Hernandez are not particularly susceptible to COVID-19. *See United States v. Ocanas*, 516 F. Supp. 3d 936, 940 (D. Minn. 2021) (holding that a 56-year-old plaintiff with an underlying health condition of hepatitis C was not particularly susceptible to COVID-19); *see also United States v. Lara-Villaruya*, No. 3:18-cr-03425-GPC, 2020 WL 6395876, at *4 (S.D. Cal. Nov. 2, 2020) (holding that a 59-year-old defendant with underlying conditions of osteoporosis and poor blood circulation did not merit compassionate release); *United States v. Stoddard*, No. 1:14-CR-76, 2021 WL 2379568, at *5 (E.D. Va. June 9, 2021) (holding that a 66-year-old defendant with hypertension and hepatitis C was not particularly susceptible to COVID-19). Nunez-Hernandez falls in the middle range of the CDC's fourth-oldest age group, placing him below the three highest-risk age groups. *See* CDC, *Risk for COVID-19 Infection, Hospitalization, and Death By Age Group*, (Feb. 6, 2023), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html. Like the many similarly aged inmates held at Bureau of Prison facilities, Nunez-Hernandez's slightly elevated risk

4

of severe COVID-19 infection because of his age does not constitute an extraordinary and compelling reason for compassionate release.

Nor does Nunez-Hernandez demonstrate that underlying medical conditions, alone or in conjunction with his age, make him particularly susceptible to COVID-19. Nunez-Hernandez did not submit any exhibits identifying underlying medical conditions with his motion, ECF No. 96-1, nor did he discuss medical conditions in his motion, ECF No. 96. Case records predating Nunez-Hernandez's motion show only that he suffers from gout, *see* ECF No. 92 at 16, but gout has not been found to increase an individual's susceptibility to COVID-19. *See* Mayo Clinic Staff, *COVID-19: Who's at higher risk of serious symptoms?* (Sep. 27, 2022), https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-who-is-at-risk/art-20483301# (listing medical conditions that increase the risk of serious COVID-19 symptoms without including gout); *see also* CDC, *People with Certain Medical Conditions*, (Feb. 10, 2023) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (listing medical conditions that increase the risk of severe illness from COVID-19 without including gout). On this record, Nunez-Hernandez has not met his burden to demonstrate he is particularly susceptible to COVID-19.

If a particularized risk of contracting COVID-19 at FCI-Fort Dix mattered,[4] Nunez-Hernandez hasn't shown that this risk is present. On this question, courts generally

---

[4]   Courts agree that a particularized risk of infection, without the inmate being particularly susceptible to COVID-19, is not an extraordinary and compelling circumstance. *See United States v. Robinson*, No. 17-cr-318 (SRN), 2020 WL 4463363, at

consider the number of active COVID-19 cases in a facility, the sufficiency of facility protocols, and vaccination rates. *See Ocanas*, 516 F. Supp. 3d at 941–42 (holding no particularized risk of infection despite 91 active cases of COVID-19 among inmates and 15 active cases of COVID-19 among prison staff at defendant's facility); *see also United States v. Gandia-Maysonet*, 96-CR-304-2 (RAM), 2021 WL 219191, at *2 (D.P.R. Jan. 21, 2021) (holding no particularized risk of infection when there were four active cases of COVID-19 at defendant's facility). Nunez-Hernandez alleges there is a COVID-19 outbreak at FCI-Fort Dix, ECF No. 96 at 5, but FCI-Fort Dix reports only four active cases of COVID-19 among inmates, no active cases among staff, and no pending tests for inmates, *see* Fed. Bureau of Prisons, *BOP COVID-19 Statistics*, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited Feb. 28, 2023). The Bureau of Prisons also reports vaccinating 3,359 inmates and 227 staff at FCI-Fort Dix, *id.*, and has instituted standardized infection prevention protocols to contain outbreaks, *see* Fed. Bureau of Prisons, *COVID-19 Modified Operations Plan & Matrix*, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Feb. 28, 2023). Considering FCI-Fort Dix has a population of 3,923 inmates, *see* Fed. Bureau of Prisons, *FCI Fort Dix*, https://www.bop.gov/locations/institutions/ftd/ (last visited Feb. 28, 2023), the facility has a high vaccination rate and proportionally low number of active cases. This low proportion of cases, four out of 3,923 inmates, suggests FCI-Fort Dix's infection

---

*7 (D. Minn. Aug. 4. 2020) (collecting nine decisions denying motions for compassionate release even though inmates were at a particular risk of contracting COVID-19).

protocols are working. Four active COVID-19 cases are not enough to demonstrate a particularized risk of contracting COVID-19 at FCI-Fort Dix.

The applicable factors in § 3553(a) further weigh against granting Nunez-Hernandez's motion. Section 3553(a) directs courts to consider, among other factors,

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) The need for the sentence imposed—
>
>   A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   B. to afford adequate deterrence to criminal conduct; [and]
>
>   C. to protect the public from further crimes of the defendant.

18 U.S.C. § 3553(a). Nunez-Hernandez argues he should be released because he is a non-violent offender with "a low custody level and a low-risk recidivism level." Contrary to Nunez-Hernandez's assertions, his offenses were serious and reflect a pattern of repeated illegal conduct and disrespect for the law. Nunez-Hernandez was deported after illegally entering the United States in 1999, 2001, and 2011. ECF No. 57 at 3. Each of these three prior deportations was precipitated by a felony drug conviction, including a conviction for possession with intent to distribute cocaine for which he received a 70-month sentence. In early 2020, after again illegally entering the United States, Nunez-Hernandez sold 889.6 grams of high purity methamphetamine to a confidential informant. *Id*. Police arrested Nunez-Hernandez soon thereafter, seizing an additional 447.64 grams of pure methamphetamine from his vehicle and $26,860 in cash from his residence. *Id*. Nunez-Hernandez's sentence of 121 months remains just and necessary considering the

seriousness, and repeated nature, of his offenses. Compounding concerns regarding his criminal history, Nunez-Hernandez has served less than 35% of his statutory term. Cutting his sentence by more than 65% does not promote respect for the law or deter Nunez-Hernandez from future illegal conduct. Although his drug offenses did not involve violence or firearms, it is nonetheless important to protect the public from drug distribution, transportation, and possession. The relevant considerations under § 3553(a) do not warrant Nunez-Hernandez's release at this time.

The Sentencing Commission's policy statement, U.S.S.G. § 1B1.13, also does not support releasing Nunez-Hernandez. When a defendant, instead of the Director of the Bureau of Prisons, makes a motion for compassionate relief, § 1B1.13 should be treated as relevant guidance rather than limiting or binding. *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021). Before reducing a defendant's sentence, § 1B1.13 directs courts to determine the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[5] It is true Nunez-Hernandez does not have a history of violence or possessing firearms, and there is no evidence he will harm specific individuals if released. However, pertinent factors under § 3142(g) include the defendant's criminal history, history of drug abuse, and convictions involving controlled substances. A defendant's drug trafficking may be a danger to the community even without

---

[5]   The Sentencing Commission's policy statement also lists several examples of extraordinary and compelling reasons that justify a reduction in sentence, including a defendant's medical condition, age, and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). Nunez-Hernandez does not invoke, or satisfy, any of the extraordinary and compelling reasons listed.

a prior record of violence. *See United States v. McCurdy*, No. 2:17-CR-20762, 2020 WL 7073168, at *2 (E.D. Mich. Dec. 3, 2020). Given Nunez-Hernandez's criminal history, there is sufficient reason to be concerned that he will return to such activities on release. Section 1B1.13 further supports denying Nunez-Hernandez's motion for compassionate release.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) [ECF No. 96] is **DENIED** without prejudice.

Dated: March 8, 2023                                  s/ Eric C. Tostrud
                                                                    Eric C. Tostrud
                                                                    United States District Court